812 A.2d 1190

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Derrick HARVEY, Appellant.**

**No. 267 Capital Appeal Docket.**

Supreme Court of Pennsylvania.

Argued April 8, 2002.

Decided Dec. 20, 2002.

---

Jules Epstein, Kevin J. O'Brien, Philadelphia, Daniel Abraham, Pro Hac Vice, David Lubitz, Pro Hac Vice, Adam Rowland, Pro Hac Vice, for Derrick Harvey.

Catherine Marshall, Lawrence J. Goode, Philadelphia, for Commonwealth of Pennsylvania.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

· Justice NIGRO.

Following a two-day bench trial, Appellant Derrick Harvey was found guilty of, *inter alia,* first-degree murder for the killing of Shawn Wilkins. On March 19, 1999, following a bench penalty phase hearing, the trial court concluded that the three aggravating factors it found outweighed the two mitigating factors it also found and, consequently, sentenced Appellant to death.[1] This direct appeal followed.[2, 3] For the

---

1. The trial court found the following aggravating circumstances: (1) the killing was committed in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); (2) the defendant has a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9); and (3) at the time of the killing the victim was involved, associated, or in competition with the defendant in the sale, manufacture, distribution, or delivery of any controlled substance, the defendant killed the victim, and the killing promoted the defendant's activities in selling, manufacturing, distributing, or delivering controlled substances, 42 Pa.C.S. § 9711(d)(14). The trial court also found that Appellant's age, 42 Pa.C.S. § 9711(e)(4), and his family history of abuse, 42 Pa.C.S. § 9711(e)(8), were mitigating circumstances.

2. Appellant chose to forego filing post-sentence motions with the trial court and instead appealed his death sentence directly to this Court.

reasons discussed below, we affirm Appellant's conviction for first-degree murder, but reverse his sentence of death and remand the case for a new penalty hearing.

Although Appellant does not challenge the sufficiency of the evidence to support his first-degree murder conviction, this Court is required in all cases in which a death sentence has been imposed to independently review the record to determine whether the Commonwealth has established all of the elements necessary to sustain that conviction. *Commonwealth v. Ockenhouse*, 562 Pa. 481, 756 A.2d 1130, 1134 (2000). In reviewing the sufficiency of the evidence, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Id.* at 1135. In order to establish the elements of first-degree murder, "the Commonwealth [is required to] prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with deliberation." *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 196 (1997). The element of specific intent to kill may be proven by circumstantial evidence and may be inferred from the use of a deadly weapon on a vital part of the victim's body. *Ockenhouse*, 756 A.2d at 1135. The use of deadly force against a person is not justified unless the actor believes that such force is immediately necessary to protect himself against death or serious bodily injury. 18 Pa.C.S. § 505(b)(2).

Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review a trial court's judgment of a sentence of death.

**3.** Given that the trial record was transmitted to this Court without a written opinion, we previously remanded the matter to the trial court for the preparation and the filing of an opinion. The trial court has now filed its opinion.

Here, the evidence adduced at trial established the following: On January 10, 1998, thirteen-year-old Charity Wilkins was in her home with her younger siblings, Sadee and Tiara, when her twenty-two-year-old brother Shawn Wilkins, and her cousin, the sixteen-year-old Appellant, entered the house and immediately went upstairs. Approximately thirty minutes later, Charity heard gunshots. She then walked halfway upstairs and brought Sadee, who had been sitting on the stairs, back to the living room. Subsequently, Appellant appeared downstairs and, with a gun in each hand, ordered Charity upstairs to Shawn's bedroom. As Charity entered the room, she saw Shawn standing immobile in the corner near the door. Charity sat on the bed and watched Appellant go into Shawn's dresser and remove a box. After Appellant ordered Charity to lie on the bed, and she complied, he proceeded to shoot her three times, once each in the temple, the cheek, and the neck. Charity passed out and later awoke to find that Appellant had left the bedroom. After hearing someone knocking on the front door, Charity made her way downstairs where she met her cousin Joseph. She was later rushed in an ambulance to Children's Hospital of Philadelphia, where she remained for over two weeks. As a result of the shooting, Charity is blind in her left eye.

At trial, the parties stipulated that when the police arrived at the scene at approximately 4:30 p.m. on January 10, 1998, they discovered Shawn dead in the bedroom, surrounded by four fired .40–caliber cartridge cases and two fired .22–caliber cartridge cases. An autopsy of Shawn's body showed that Shawn had been shot six times, including three times in the head. The report concluded that, based on the lack of gunpowder stippling around Shawn's wounds, all six shots had been fired from a distance greater than three feet. A firearms expert's report showed that Shawn's wounds were caused by a .22–caliber gun and a .40–caliber gun, which was the same .40–caliber gun that had caused Charity's wounds. Although the police found a plastic bag containing nine packets of cocaine near the bed, they did not find any guns or money in or around the house.

Police Detective Joseph Bamberski of the Philadelphia Police Department testified that he obtained a statement from Appellant between 1:55 a.m. and 3:00 a.m. on the morning of January 12, 1998, in which Appellant admitted shooting Shawn. Detective Bamberski subsequently read Appellant's statement verbatim into the record. In his statement, Appellant described accompanying Shawn into Shawn's bedroom "so [that they] could take care of some business." N.T., 10/27/98, at 39. Appellant stated that after he gave Shawn $125 in exchange for drugs, Shawn counted the money, put it in his pocket, and then allegedly hit Appellant because the amount was "a little off." *Id.* According to Appellant's statement, Shawn then took out his gun, placed it on the bed, and started walking toward Appellant. Appellant claimed that he then grabbed a different gun from the dresser, aimed it at Shawn, and told him to back up. Appellant maintained in his statement that he thought Shawn was going to reach for the gun on the bed and shoot him, so in self-defense he shot Shawn three times in the head. Appellant also claimed that Charity came running up the stairs after he had shot Shawn, so he shot her once in the face and then laid her down on the bed. Appellant maintained that, when he left Shawn's house after the shooting, he only took with him the drugs that Shawn had given him, choosing to leave the $125 that he had exchanged for the drugs undisturbed in Shawn's pocket,[4] and that he threw the gun he had used in the shootings into an alley on his way to a friend's house.

This evidence, when viewed in the light most favorable to the Commonwealth as the verdict winner, with all reasonable inferences derived therefrom, is clearly sufficient to sustain Appellant's first-degree murder conviction for the killing of Shawn Wilkins. As stated above, Charity testified that she witnessed Shawn and Appellant walk upstairs, that there was no one else in the house besides her, Shawn, Appellant, and the two young children, and that she heard gunshots. She

4. Although Appellant claims that he left the $125 in Shawn's pocket, the police failed to find any money there when they investigated the crime scene.

also testified that after Appellant ordered her upstairs to Shawn's bedroom at gunpoint, she noticed Shawn standing slumped over in the corner of the bedroom. The autopsy report later showed that Shawn had been shot three times in the head. This evidence clearly supports the inference that Appellant deliberately shot Shawn on a vital part of the body and was, therefore, sufficient to sustain Appellant's first-degree murder conviction. *See Ockenhouse*, 756 A.2d at 1135 (specific intent to kill may be inferred by use of deadly weapon on vital part of body).

■ The evidence was also sufficient to support the trial court's finding that Appellant did not act in self-defense, as Appellant alleged. In his own statement to the police, Appellant admitted that he shot Shawn while Shawn was unarmed. Moreover, even if Shawn in fact threatened Appellant with deadly force before Appellant shot him, as Appellant argued, the autopsy report revealed that Shawn had been shot a total of six times, which was simply more force than would have been necessary for Appellant to use in order to protect himself. *See Commonwealth v. Washington*, 547 Pa. 563, 692 A.2d 1024, 1029 (1997) (based on number and severity of victim's wounds, defendant used more force than reasonably necessary to protect self from serious bodily injury and shooting was therefore not in self-defense). These circumstances clearly disprove Appellant's claim that his use of deadly force was justified, and thus, we agree with the trial court that there was sufficient evidence presented at trial to disprove Appellant's self-defense claim beyond a reasonable doubt.

■■ Appellant's first three claims of error involve the alleged ineffectiveness of his trial counsel during the guilt phase of trial. This Court has long held that counsel is presumed to have rendered effective assistance and that a defendant has the burden of proving otherwise. *Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341, 343 (2000). In order to obtain relief based on counsel's ineffective assistance, the defendant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was

without a reasonable basis designed to effectuate his interest; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.*, if not for counsel's ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different. *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226, 230 (1994). Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test. *See, e.g., Commonwealth v. Johnson*, 527 Pa. 118, 588 A.2d 1303, 1305 (1991); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987); *Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610, 616 (1975).

In his first claim, Appellant argues that his trial counsel was ineffective in preparing for the guilt phase of his trial. Specifically, Appellant asserts that counsel was ineffective for failing to: (1) adequately consult with him prior to trial; (2) conduct an independent pretrial investigation beyond the evidence turned over by the Commonwealth during discovery; and (3) introduce any evidence at trial. Based on the record before us, Appellant's first claim fails.

In the first instance, it is well settled that the amount of time an attorney spends consulting with his client before trial is not, by itself, a legitimate basis for inferring the total extent of counsel's pretrial preparation, much less the adequacy of counsel's preparation. *Commonwealth v. Bundy*, 491 Pa. 607, 421 A.2d 1050, 1051 (1980). Here, beyond alleging that counsel only spent one hour consulting with him before trial, Appellant fails to allege any issues that his counsel should have raised or any beneficial information that his counsel would have discovered had further pretrial consultations been held. *See Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 896 (1999) (to establish ineffectiveness on basis of alleged inadequate pretrial consultation, defendant must establish that counsel inexcusably failed to raise issues that, had they been raised, would have entitled him to relief). Thus, Appellant's claim that his trial counsel was ineffective for failing to adequately consult with him before trial fails.

█ Appellant also argues that his trial counsel was ineffective for merely relying on the evidence turned over by the Commonwealth during discovery and for failing to conduct an independent pretrial investigation of both witnesses and physical evidence. As in the claim above, however, Appellant does little more than offer bald allegations to support the instant claim of ineffectiveness. Appellant asserts that his counsel was ineffective for failing to independently interview witnesses, who he identifies as Charity, Charles Wilkins, Jr., and Joseph Seagraves, but he completely fails to demonstrate how doing so would have provided material evidence or been helpful to his defense.[5] *See Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504, 505 (1989) (offer of proof must be made alleging sufficient facts upon which reviewing court can conclude that counsel was ineffective). Accordingly, this claim fails.[6]

5. Instead, Appellant relies on *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (Pa.1976), for the proposition that "the prosecution's file is not a substitute for an independent investigation by defense counsel." *Id.* at 374. *Mabie*, however, is completely distinguishable from the instant case in several respects. The defendant in *Mabie* was sentenced upon a guilty plea to second-degree murder, and on appeal, this Court held that the defendant was denied effective representation where counsel, relying entirely on the District Attorney's file, failed to make any attempt to confirm the defendant's contention that he had been hospitalized immediately after the killing for injuries received in the fight and where counsel discounted the defense of self-defense without questioning eyewitnesses other than the defendant and his brother. Most notably, in holding that the prosecution's file was not a substitute for an independent investigation by defense counsel, this Court reasoned that "(s)ince discussions with witnesses and a review of Mabie's hospital records may have established a defense and the pursuit of such a possible defense was curtailed only upon the basis of information in the Commonwealth's file, counsel's decision not to investigate either or both avenues cannot be said to have [had] a reasonable basis designed to effectuate his client's interest." *Id.* Instantly, Appellant does not claim, nor do the facts suggest, the existence of a possible defense that counsel failed to explore. In fact, unlike the defendant's counsel in *Mabie*, Appellant's counsel specifically pursued a self-defense claim here. Moreover, there was no witness to the shooting who was alive to testify in support of this self-defense claim. Thus, Appellant's reliance on *Mabie* is misplaced.

6. Moreover, under the facts of this case, we find that Appellant's counsel had ample reason to believe that independent interviews with Charity, Charles Wilkins, Jr., and Joseph Seagraves were unnecessary

546

■ Further, Appellant complains that his trial counsel was ineffective for not introducing into evidence a gun and rounds of ammunition, which were found in Shawn's possession at the time of the killing. Specifically, Appellant argues that this evidence would have supported his claim that he had a reasonable belief that he was in physical danger when he shot Shawn. In making his argument, however, Appellant would have us ignore the fact that the gun at issue was found outside of the home in Shawn's **car,** not inside the house where Shawn was killed. Given the distance of the gun from the scene of the shooting, the gun only becomes relevant to Appellant's claim of self-defense if used to show Shawn's violent propensities. *See Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748, 751 (1971) (victim's violent propensities relevant to self-defense claim). However, at trial, substantial evidence was presented regarding the guns and the ammunition Shawn possessed at his residence and his activities as a drug dealer. Thus, the fact that an additional gun was found in Shawn's car would only have been cumulative evidence regarding his violent propensities, and accordingly, counsel's decision not to introduce this evidence did not prejudice Appellant. *See Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955, 961 (1984) (no prejudice to defendant when counsel fails to present cumulative evidence).

■ In the final part of his first issue, Appellant argues that his trial counsel was ineffective for failing to introduce any evidence at trial. We disagree. Faced with Appellant's admission of killing Shawn, as well as Charity's testimony that Appellant killed Shawn and then tried to execute her, counsel

and, in fact, would have proved fruitless. *See, e.g., Commonwealth v. Arthur,* 488 Pa. 262, 412 A.2d 498, 502 (1980) (independent interview unnecessary if counsel could conclude prior to interview that witness's testimony would be of no value or damage defense's case); *Commonwealth v. Smith,* 490 Pa. 380, 416 A.2d 986, 987–88 (1980) (same). Through information turned over by the Commonwealth during discovery, counsel had personal knowledge of the statements given by these witnesses. These statements both were inconsistent with Appellant's version of the facts and belied his self-defense claim. With this knowledge, counsel's failure to personally interview these witnesses did not constitute ineffectiveness.

sought to exploit the potentially exculpatory aspects of Appellant's admission to argue for self-defense or a reduction in the degree of homicide. Given the overwhelming evidence against Appellant, we cannot say that counsel's strategy was unreasonable. *See Commonwealth v. Tabron*, 502 Pa. 154, 465 A.2d 637, 639 (1983) (in light of impressiveness of the Commonwealth's case, counsel's strategy to direct efforts at reducing homicide from first to second degree was in client's best interests); *also Commonwealth v. Rizzuto*, 566 Pa. 40, 777 A.2d 1069, 1085 (2001) (mere fact that trial strategy is ultimately unsuccessful does not render it unreasonable). Thus, Appellant's claim that his trial counsel was ineffective in preparing for trial offers him no basis for relief.[7]

■ In his second claim, Appellant maintains that his trial counsel was ineffective for failing to move to suppress his inculpatory statement in which he admitted to shooting Shawn and Charity Wilkins. This claim fails.

■ The trial court must assess the voluntariness of a confession based on the totality of the circumstances, looking at the following factors: (1) the duration and means of interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) "any and all other factors that could drain a person's ability to withstand suggestion and coercion." *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 882 (1998). When looking at the confession of a juvenile, the court must also consider the juvenile's age, experience, and sophistication, and whether an interested adult was present during the interrogation. *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283, 1288 (1984).

7. Appellant also claims that the trial court committed legal error by not sufficiently inquiring into Appellant's oral complaints about counsel's performance. On the first day of trial, however, the court engaged in an extensive colloquy with trial counsel and Appellant concerning counsel's readiness for trial. After having counsel's preparation efforts explained to him, Appellant stated that he was satisfied with counsel's performance. *See* N.T., 10/26/98, at 29. Thus, Appellant's claim is meritless.

In the instant case, the record reveals that at the time of the interrogation, Appellant, who the trial court found to be of average intelligence, was only two months away from his seventeenth birthday and was already experienced with the criminal justice system by way of a prior adjudication of delinquency for aggravated assault. When Appellant was brought to the police station, he was responsive to the questions asked of him and did not appear to be under the influence of drugs or alcohol. At no time was he physically or psychologically abused, threatened, or made any promises by the police. Appellant also had the opportunity to speak with his mother, and his mother was present during the interrogation at which he waived his rights. Moreover, Appellant had only been in police custody for less than two hours and had only been questioned for a little more than an hour when he gave his inculpatory statement to the police. Based on the totality of these circumstances, we find that Appellant's statement to police was given voluntarily and was therefore admissible. Accordingly, Appellant's counsel cannot be deemed ineffective for failing to pursue this meritless claim. *See Johnson,* 588 A.2d at 1305.

In his final claim of error in the guilt phase of his trial, Appellant asserts that his trial counsel was ineffective for failing to ask for a competency hearing to inquire into the competency of the Commonwealth's thirteen-year-old witness, Charity Wilkins. This claim also fails.

In general, a witness's competency to testify at trial is presumed and the burden falls on the objecting party to demonstrate the witness's incompetence. *See Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307, 310 (1959). However, when a child under the age of fourteen is called to testify, the competency of the minor must be independently established. *Id.* In order to be found competent, the minor must possess: (1) the capacity to communicate, including both an ability to understand questions and to frame and express intelligent answers; (2) the mental capacity to observe the occurrence itself and the capacity to remember the matter about which

she has been called to testify; and (3) a consciousness of the duty to speak the truth. *Id.*

In the instant case, the record clearly indicates that Charity was able to understand the questions asked of her by counsel and was able to frame and express intelligent answers to those questions regarding the details of the shooting. However, as the trial court acknowledged, given that Charity was only thirteen years old at the time of trial, the court did err in failing to conduct a separate colloquy in order to determine Charity's understanding of the oath that she took to tell the truth. *See id.* Nevertheless, we agree with the trial court that because it had the opportunity to observe Charity's demeanor and was the sole determiner of her truthfulness, the fact that the trial court did not engage in a distinct colloquy regarding the truthfulness aspects of her competency did not prejudice Appellant. Accordingly, this claim, like Appellant's other claims of error in the guilt phase of his trial, fails, and we therefore affirm Appellant's conviction for first-degree murder.

Turning to Appellant's claims of error in his penalty phase, Appellant first argues that the Commonwealth did not present sufficient evidence to establish all of the elements of the aggravating circumstance defined by 42 Pa.C.S. § 9711(d)(14) (the "(d)(14) aggravator"). We agree.

The (d)(14) aggravator applies only if:

At the time of the killing, the victim was or had been involved, associated or in competition with the defendant in the sale, manufacture, distribution or delivery of any controlled substance or counterfeit controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act or similar law of any other state, the District of Columbia or the United States, and the defendant committed the killing or was an accomplice to the killing as defined in 18 Pa.C.S. § 306(c), **and** the killing resulted from or was related to that association, involvement or competition to **promote** the defendant's activities in selling, manufacturing,

distributing or delivering controlled substances or counterfeit controlled substances.

42 Pa.C.S. § 9711(d)(14) (emphases added). During the penalty phase of a first-degree murder trial, the Commonwealth bears the burden of proving all aggravating circumstances beyond a reasonable doubt. 42 Pa.C.S. § 9711(c)(1)(iii).

The trial court below based its finding that the Commonwealth had proven the (d)(14) aggravator on "[Appellant's] own statement [during interrogation] that he was picked up by the decedent [and] went to his room to get paid for the drugs, or buy drugs, or exchange money for the drugs." N.T., 3/19/99, at 133. The trial court's basis for finding the (d)(14) aggravator **only** addressed the first element of the aggravator, *i.e.*, that at the time of the killing the victim was involved with the defendant in the sale of a controlled substance. The trial court, however, seemingly ignored an essential element of the (d)(14) aggravator, *i.e.*, that the killing, which resulted from that involvement, was to promote the defendant's activities in selling controlled substances.

■■■ Our review of the record reveals that the Commonwealth failed to present any evidence whatsoever that Appellant killed Shawn to promote his activities in selling drugs. While the record does support a conclusion that Appellant and Shawn were involved in a drug sale at the time of the killing, the plain language of the (d)(14) aggravator **also** requires a showing that Appellant killed Shawn to "**promote** [his] activities in selling, manufacturing, distributing or delivering controlled substances." 42 Pa.C.S. § 9711(d)(14) (emphasis added). Accordingly, in order to satisfy its burden of proving that the (d)(14) aggravator applied beyond a reasonable doubt, the Commonwealth was required to make a showing that Appellant killed Shawn for a specific purpose, *i.e.*, to contribute to the growth or prosperity of his own drug activities, which the Commonwealth completely failed to do here. Given this void in the record, we conclude that the trial court erred in finding the (d)(14) aggravator.[8] As such, although we

_____

**8.** While we need not address Appellant's remaining claims regarding his penalty phase, we note our agreement with Appellant that the

affirm Appellant's conviction for first-degree murder, we vacate his judgment of sentence and remand for a new penalty phase hearing. *See Commonwealth v. Wesley,* 562 Pa. 7, 753 A.2d 204, 216 (2000) ("Where [this Court] strike[s] down an aggravating circumstances and other aggravating circumstances are present along with a finding of a mitigating circumstance, we are not in a position to determine whether the lack of the aggravating circumstance struck down would have changed the jury's determination and ... we are required to vacate the penalty of death and remand for a new sentencing hearing."). Jurisdiction relinquished.

Justice EAKIN files a concurring opinion in which Justice NEWMAN joins.

### CONCURRING OPINION

Justice EAKIN.

I join the affirmation of appellant's conviction. I agree that 42 Pa.C.S. § 9711(d)(14), as framed by the legislature, requires the killing be with the purpose of promoting the defendant's drug activity, and the record on this element is insufficient. The Commonwealth's brief does not argue otherwise, and remand is appropriate. However, I find sufficient evidence to allow a conclusion of robbery, despite the suggestion of my colleagues to the contrary, and thus offer this concurrence.

Justice NEWMAN joins this concurring opinion.

record is also sparse as it relates to the trial court's finding that the Commonwealth presented sufficient evidence of the aggravating circumstance that the killing was committed in the perpetration of a felony. *See* 42 Pa.C.S. § 9711(d)(6). The only evidence that the Commonwealth presented in this regard was Charity's testimony that she saw Appellant take a box out of Shawn's dresser and the stipulation by both parties that the police did not find any money in Shawn's pockets or in his bedroom when they searched the premises, even though Appellant had stated to the police that he had left the $125 that he had given Shawn in exchange for drugs in Shawn's pocket. Given this dearth of evidence, the trial court's determination that the Commonwealth had proven beyond a reasonable doubt that Appellant had killed Shawn while in the perpetration of a robbery is tenuous at best.