J-A18016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JALASPIAN CHARLES | : | |
| | : | |
| Appellant | : | No. 805 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 3, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002325-2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: OCTOBER 25, 2023**

Jalaspian Charles appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his convictions of first-degree murder,[1] recklessly endangering another person (REAP),[2] and carrying a firearm without a license.[3]  After review, we affirm.

On the evening of May 27, 2019, Dezhane Ferguson and Mattie Sims were walking in the Chauncey Drive area of Bedford Dwellings in the Hill District of Pittsburgh.  Ferguson and Sim encountered Damian Gray, an acquaintance, and struck up a conversation with him.  As they conversed, Charles approached the group and aggressively confronted Ferguson, stating

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] *Id.* at § 2705.

[3] *Id.* at § 6106(a)(1).

"I'll have my bitch whoop your ass."[4]  At that time, Ferguson, Sims, and Grey attempted to leave the area; however, Charles followed them.

Immediately thereafter, Charles whistled toward a vehicle occupied by his girlfriend, Doshanic McLauren.  McLauren exited the vehicle and, at Charles' behest, engaged in a physical altercation with Ferguson.  During the altercation, Charles brandished a firearm[5] and demanded that Ferguson and McLauren continue to fight.  Charles then pointed the firearm at Sims' face and threatened to shoot her when Sims attempted to intercede on Ferguson's behalf.

Shortly thereafter, the victim, Isaac Harrison, appeared at the scene and attempted to break up the fight between Ferguson and McLauren.  Charles aggressively approached Harrison with the firearm, and an argument between Charles and Harrison ensued.  While exchanging words, Harrison backed away from Charles.  Charles also began to walk away from Harrison and towards his vehicle; however, Charles turned around to reengage with Harrison.  Charles then shot Harrison multiple times, as Harrison attempted to flee to safety.  Charles and McLauren returned to the vehicle in which they arrived and fled the scene.

---

[4] The events described herein were captured via surveillance video, discussed *infra.*

[5] Charles did not have a license to carry a firearm.  **See** N.T. Jury Trial, 11/8/21, at 350-51.

- 2 -

City of Pittsburgh Police officers responded to a notification regarding shots that had been fired at or near 2507 Bedford Avenue. Upon their arrival, the officers were informed by dispatch that Harrison had been transported by a private vehicle to the University of Pittsburgh Medical Center (UPMC) Mercy. The officers encountered an innocent bystander, Terrina Daniels, who was shot in the foot by one of Charles' bullets but survived her injuries. The area was processed, and ten spent shell casings were recovered. Jason Very, a firearm and toolmarks expert from the medical examiner's office, determined that all ten casings, which were the only casings recovered from the murder scene, had been fired from the same gun.

Harrison was pronounced dead at UPMC Mercy at 11:13 p.m. on May 27, 2019. Todd Luckashevic, M.D., a forensic pathologist and the associate Medical Examiner for the Allegheny Counter Medical Examiner's Office, performed an autopsy on Harrison and determined that Harrison suffered five separate gunshot wounds—one each to his upper chest, right thigh, and left foot, and two to his back. Doctor Luckasevic concluded that Harrison died as a result of the gunshot wounds, and his manner of death was ruled a homicide.

Within three hours of Harrison's death, detectives identified Charles and his vehicle from a surveillance video obtained from the housing authority.[6] A search warrant was executed for Charles' vehicle, which revealed large

---

[6] Detectives were able to identify Charles as the person with the firearm and his vehicle in the housing authority video because they were familiar with him from prior encounters. *See* N.T. Jury Trial, 11/6/21, at 169, 183-88; *id.*, 11/7/21, at 197-98, 201, 216.

amounts of road dirt and grime on it, except for the areas on the top of the driver and passenger doors, which had been wiped clean. After the shooting, Charles avoided returning to his home, and he evaded arrest for several months. Ultimately, Charles was located and arrested in Colorado, five months after the shooting occurred.

The Commonwealth charged Charles with the aforementioned offenses[7] and, on October 6, 2021, he proceeded to a jury trial, during which he testified that he shot and killed Harrison in defense of himself and his family. The jury convicted Charles of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report (PSI). On February 3, 2022, the trial court imposed a mandatory term of life imprisonment without parole for Charles's first-degree murder conviction, a consecutive term of imprisonment of one to two years for carrying a firearm without a license, and an additional term of one to two years' incarceration for the REAP conviction, to be served consecutively to the sentence for the firearms violation sentence. On February 14, 2022, Charles filed a timely

---

[7] Charles was also charged with person not to possess a firearm. However, on September 16, 2021, the trial court issued an order severing the charge from the case to a separate jury trial, upon Charles's request.

post-sentence motion,[8, 9] which the trial court denied on June 7, 2022. On July 7, 2022, Charles filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[10]

Charles now raises the following questions for our review:

[1.] Did the trial court err in sustaining [Charles'] conviction for murder in the first degree where the evidence at trial was quantitatively and/or qualitatively insufficient to disprove that [Charles] was acting reasonably and/or unreasonably in self-defense or defense of others?

[2.] Did the trial court err in sustaining [Charles'] conviction for recklessly endangering another person where the evidence at trial was quantitatively and/or qualitatively insufficient to disprove that [Charles] was acting reasonably and/or unreasonably in self-defense or defense of others?

[3.] Did the trial court err in sustaining [Charles'] conviction for carrying a firearm without a license where the evidence at trial was quantitatively and/or qualitatively insufficient to disprove that [Charles] possessed a pistol with a barrel length of less than 16

---

[8] The 10th day to file a timely post-sentence motion was February 13, 2022, a Sunday, and accordingly, Charles had until February 14, 2022, to file a timely post-sentence motion. *See* 1 Pa.C.S.A. § 1908 ("[w]henever the last day of any such time period shall fall on a Saturday or Sunday . . . such day shall be omitted from the computation."); Pa.R.Crim.P. 720(A)(1) (requiring "written post-sentence motion shall be filed no later than 10 days after imposition of sentence").

[9] On March 11, 2022, Charles filed an amended post-sentence motion, *nunc pro tunc*, which expanded on the arguments set forth in his previously filed post-sentence motion.

[10] We note that neither the Rule 1925(b) order, nor the concise statement appear in the record before this Court. Nevertheless, the docket indicates that both were filed, and the trial court, in its opinion, references claims raised therein. *See* Trial Court Opinion, 11/21/22, at 3-4. Accordingly, this omission does not impede our review.

inches as determined from measuring the muzzle of the barrel to the face of the closed action, bolt, or cylinder?

Brief for Appellant, at 4.

When examining a challenge to the sufficiency of the evidence, we adhere to the following standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

In his first claim, Charles argues that the Commonwealth failed to disprove, beyond a reasonable doubt, that his use of deadly force against Harrison was undertaken in self-defense and/or in the defense of others. *See* Brief for Appellant, at 13-26. Charles also argues that even if he was not acting in self-defense and/or in the defense of others, he was acting in

imperfect self-defense and/or defense of others, and, therefore, he should have been convicted of voluntary manslaughter, rather than first-degree murder. *See id.* 15-26. We disagree.

Pursuant to section 2502(a) of the Crimes Code, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). The Crimes Code defines "intentional killing" as a "willful, deliberate and premeditated killing" of another person. *Id.* at § 2502(d). To sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant, in fact, did the killing; (3) the defendant acted with a specific intent to kill; and (4) the killing was done with premeditation and deliberation. *Commonwealth v. Simmons*, 662 A.2d 621, 627-28 (Pa. 1995); *see also Commonwealth v. Counterman*, 719 A.2d 284, 292 (Pa. 1998) (stating "no particular period of premeditation is required to form the requisite intent"). The Commonwealth may prove the specific intent to kill "solely through circumstantial evidence." *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008). Moreover, a fact-finder may infer the specific intent to kill "based on the defendant's use of a deadly weapon upon a vital part of the victim's body." *Id.*

Charles argues that the Commonwealth failed to disprove that he was acting in self-defense and/or defense of others. Generally, the use of force against a person is justified "when the actor believes that such force is

immediately necessary for the purpose of protecting himself against the use of unlawful force" by another person. 18 Pa.C.S.A. § 505(a). Moreover, the use of force against a person is justified to protect a third person only when:

> (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

> (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

> (3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S.A. § 506(a).

In order to successfully invoke a "defense of others" claim, "the same standards which are required for self-defense must be met." ***Commonwealth v. Simmons***, 475 A.2d 1310, 1313 (Pa. 1984); ***see also Commonwealth v. La***, 640 A.2d 1336, 1346 (Pa. Super. 1994) ("Because the right to take a human life is dependent upon the surrounding circumstances, persons acting in defense of others are in the same situation and upon the same plane, as those who act in defense of themselves").

There is no burden on the defendant to prove a claim of self-defense or defense of others, but there must be some evidence, from any source, to justify a finding of self-defense or defense of others. ***Commonwealth v. Black***, 376 A.2d 627, 630 (Pa. 1977). If there is any evidence that will support the claim, then the issue is properly before the fact-finder. ***See***

*Commonwealth v. Mayfield*, 585 A.2d 1069, 1071 (Pa. Super. 1991). "If the defendant properly raises self-defense under Section 505 or defense of other under Section 506, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense or defense of others." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005).

The Commonwealth can disprove a claim of self-defense or defense of others by establishing that: "[1] the accused did not reasonably believe that he was in danger of death or serious bodily injury; or [2] the accused provoked or continued the use of force; or [3] the accused had a duty to retreat[,] and the retreat was possible with complete safety." *Smith*, 97 A.3d at 787. The Commonwealth must establish only one of these three elements beyond a reasonable doubt. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000).

The finder of fact is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense or defense of others. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011). Disbelief of the defendant's testimony, however, is not sufficient to satisfy the Commonwealth's burden to disprove self-defense or defense of others absent some evidence negating self-defense or defense of others. *Commonwealth v. Ward*, 188 A.3d 1301, 1304 (Pa. Super. 2018).

Instantly, the record reveals that Charles arrived at Chancery Drive in his vehicle with his girlfriend, McLauren, and approached Ferguson, Sims, and Gray in an agitated state. *See* N.T. Jury Trial, 11/6/21, at 34; *id.*, 11/8/21, at 353, 462. Immediately thereafter, Charles directed McLauren to exit the vehicle and, at Charles's behest, McLauren engaged in a physical altercation with Ferguson. *Id.*, 11/8/21, at 432-33; 459, 461-62. During the physical altercation, Charles brandished a firearm and demanded that Ferguson continue fighting McLauren. *Id.* at 463-64. Charles also pointed the firearm in Sims's face and threatened to shoot her when she tried to help Ferguson. *Id.* Shortly thereafter, Harrison arrived at the scene and attempted to break up the fight between Ferguson and McLauren. *Id.* at 463, 467. At this point, Charles aggressively approached Harrison with the firearm. *Id.*, 11/6/21, at 35. An argument between the two ensued, during which Harrison began to back away from Charles. *Id.*, 11/8/21, at 464-65, 473. Charles also started to walk away from Harrison and towards his vehicle; however, Charles turned back around to reengage with Harrison and then shot him. *Id.* at 464-65. Even though Harrison had been struck in the chest and was running away from Charles to safety, Charles continued to run towards Harrison and shot at him 10 times, striking him with at least 5 of those shots. *Id.* 11/6/21, at 54-56, 132; *id.*, 11/7/21, at 210-11, 214; *id.*, 11/7/21, at 351, 459, 468-69, 474.

Based upon the above facts, the Commonwealth disproved Charles's claim that he was acting in self-defense and/or in the defense of others beyond a reasonable doubt where Charles employed an excessive use of force. *See Commonwealth v. Harvey*, 812 A.2d 1190, 1196 (Pa. 2002) (even assuming victim threatened defendant with deadly force before defendant shot him, where "the autopsy report revealed that [the victim] had been shot a total of six times, which was simply more force than would have been necessary for [the defendant] to use in order to protect himself"); *see also Commonwealth v. Rivera*, 983 A.2d 1211, 1222 n.10 (Pa. 2009) ("even if [a]ppellant believed that [the victim] was pursuing him with a deadly weapon, the use of force employed by [a]ppellant was excessive in that he shot [the victim] a second time at close range after already having shot him in the chest, causing the victim to fall forward").

Charles provoked the altercation by instigating the fight between Ferguson and McLauren and by approaching Harrison in an agitated state with a firearm when Harrison attempted to break up the fight. It is also evident that Charles used deadly force when he brandished his firearm first at Ferguson, demanding she continue to fight McLauren; when he pointed the firearm in Sims' face and threatened to shoot her; and when he approached Harrison in an agitated state with his firearm. Similarly, it is apparent that Charles escalated that force when he shot Harrison, continued to shoot at him at least 10 times—striking Harrison with at least 5 of those shots, two of which

struck Harrison in the back as he tried to run to safety. *Smith*, *supra*.

Moreover, Charles had an unobstructed path of retreat to his vehicle but

instead decided to reengage with Harrison and shoot at him. Meanwhile,

Harrison neither possessed or brandished a weapon or firearm at any point

during his interactions with Charles.[11]   Therefore, we conclude that the

Commonwealth offered sufficient evidence to disprove beyond a reasonable

doubt that Charles was acting in self-defense and/or in the defense of others.

*See Smith*, *supra*; *see also Harvey*, *supra*.  Accordingly, we grant him no

relief.[12]

---

[11] No witness called by either the prosecution or the defense testified that they saw Harrison in possession of a weapon, the surveillance footage did not depict a weapon in Harrison's hands at any stage of his interaction with Charles, and Charles himself admitted at trial that Harrison's hands were down when he shot him.  *See* N.T. Jury Trial, 11/8/21, at 468.

[12] Moreover, we conclude that after shooting Harrison, Charles fled the scene with McLauren in their vehicle and wiped clean the top of the driver side and passenger's side doors.  *See* N.T. Jury Trial, 11/6/21, at 153; *id.*, 11/7/21, at 221-30, 240; *id.*, 11/8/21, at 351, 457, 469.  The weapon Charles used to kill Harrison was never found.  *See* N.T. Jury Trial, 11/7/21, 214; *id.*, 11/8/21, at 351.  Additionally, after fleeing the scene, Charles avoided returning to his home, fled out of state, and evaded arrest for several months.  *See* N.T. 11/7/21, at 216-17, 221-22; *id.*, 11/8/21, at 305-351, 472; *see also Commonwealth v. Hughes*, 865 A.2d 761, 792 (Pa. 2004) (conduct of defendant after crime may be admitted showing guilt); *Commonwealth v. Bradley*, 69 A.3d 253, 258-59 (Pa. Super. 2013) ("[D]efendant's attempts to cover up after a crime can be inferred to demonstrate consciousness of guilt.").  Thus, Charles's flight and subsequent attempted concealment of his firearm also undermine his claim of self-defense.

Charles also argues that even if he was not acting in self-defense and/or in the defense of others, he was acting in imperfect self-defense and/or defense of others, and, therefore, he should have been found guilty or voluntary manslaughter, not first degree murder. **See** Brief for Appellant, at 15-16, 25-26.

The Crimes Code defines voluntary manslaughter as follows:

(b) Unreasonable belief killing justifiable.--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b).

The defense of "imperfect self-defense," which reduces the crime of murder to voluntary manslaughter, exists where the defendant believed that deadly force was necessary to protect himself or another against the use of unlawful force, but that belief was unreasonable. **See Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012). This defense applies only in limited circumstances. **See Commonwealth v. Green**, 273 A.3d 1080, 1087-88 (Pa. Super. 2022). This Court has recently stated:

If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that [] the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

**Commonwealth v. Jones**, 271 A.3d 452, 459 (Pa. Super. 2021)

- 13 -

Charles's claim of imperfect self-defense and/or defense of other fails for the same reasons as his claim of self-defense and/or defense of others. Namely, Charles provoked the altercation by drawing his firearm, and used excessive force by repeatedly firing his weapon **even after** Harrison was running to safety, and **even though** Harrison was unarmed. *See Jones*, *supra*. Accordingly, we grant Charles no relief.

In Charles's second claim, he argues that the Commonwealth failed to present sufficient evidence to sustain his REAP conviction. *See* Brief for Appellant, at 26. Specifically, Charles contends that the Commonwealth failed to prove beyond a reasonable doubt that Charles was not acting in self-defense when he shot at Harrison, and thus, his claim of self-defense negates any element of recklessness necessary for a conviction for REAP. *See id.* at 26-28. We disagree.

The Crimes Code states that a person is guilty of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705(a). To sustain a REAP conviction, the Commonwealth must establish the defendant had "a conscious disregard of a known risk of death or great bodily harm to another person," and that the defendant "had an actual present ability to inflict harm and not merely the apparent ability to do so." *Commonwealth v. Klein*, 795 A.2d 424, 427-28 (Pa. Super 2002).

Based upon the previously stated facts, the Commonwealth disproved Charles's claim of self-defense, and thus properly convicted Charles of REAP. *See Commonwealth v. Hopkins*, 747 A.2d 910, 916 (Pa. Super. 2000) ("brandishing a loaded firearm during the commission of crime provides a sufficient basis" for factfinder to conclude "that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death"); *see also Commonwealth v. Headley*, 242 A.3d 940, 944 (Pa. Super 2020) (citing *Commonwealth v. Shaw*, 2019 PA Super 21, 203 A.3d 281, 284 (Pa. Super. 2019)) (proof of a defendant "[d]ischarging a firearm near another person or in a manner where the projectile could have struck a person" is sufficient to support a REAP conviction).

Sufficient competent evidence existed to disprove Charles's self-defense claim. *See Smith*, *supra*. It is clear that Charles provoked the use of force when he brandished his firearm at Ferguson, Sims, and Harrison. It is also clear that Charles escalated that use of force by repeatedly firing at Harrison even after Harrison ran to safety, striking Harrison with five bullets and an innocent bystander, Daniels, in the foot. Conversely, no other individual at the scene, other than Charles, either possessed and/or brandished a firearm.

Moreover, sufficient evidence existed to establish the element of recklessness to convict Charles for REAP. Charles shot at Harrison at least 10 times outside Bedford Dwellings, a residential housing community. Detective

Joseph Fabos also testified at trial that, in addition to Sims, Ferguson, and Gray, there were several other people seen on the surveillance video near the scene of the accident. N.T. Jury Trial, 11/7/21, at 220. Therefore, we conclude that the Commonwealth provided sufficient evidence to sustain Charles' REAP conviction. **See Hopkins**, supra; **see also Headley**, supra. Accordingly, we grant him no relief.

In his third claim, Charles argues that the Commonwealth presented insufficient evidence to sustain his conviction for carrying a firearm without a license. **See** Brief for Appellant, at 29-33. Specifically, Charles contends that because the firearm was not recovered, and therefore, never presented to the jury, and because no testimony was given regarding the length of the barrel of the firearm, the Commonwealth failed to prove beyond a reasonable doubt that his firearm had a barrel length of 16 inches or less consistent with the definition of a "firearm" in 18 Pa.C.S.A. § 6102. **See id**. We disagree.

The Crimes Code defines the crime of carrying a firearm without a license as follows:

(a) Offense defined.--

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

Essentially, the offense of carrying a firearm without a license requires proof of three elements: "(a) the weapon was a firearm, (b) the firearm was unlicensed, and (c) the firearm was concealed on or about the person outside his home or place of business." **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa. Super. 2004) (quotation and citation omitted). For purposes of Section 6106(a)(1), the Crimes Code defines a firearm as follows:

> "Firearm." Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

The Commonwealth may establish the barrel length of a weapon under section 6102 through direct or circumstantial evidence. **Commonwealth v. Rozplochi**, 561 A.2d 25, 31 (Pa. Super. 1989); **see also Commonwealth v. Jennings**, 427 A.2d 231, 235 (Pa. Super. 1981) ("the length of a weapon can be determined from what an object looks like, feels like, sounds like, or is like a firearm").

Based upon our review of the record, we agree with the trial court's determination that the testimony and evidence admitted at trial established that Charles possessed a firearm within the definition of the statute. Trial Court Opinion, 11/21/21, at 10 (relying on factors set forth in **Jennings, supra** and **Rozplochi**, **supra**); **see Commonwealth v. Brown,** 2019 WL

4034023, *4 (Pa. Super. Aug. 27, 2019) (unpublished memorandum decision)[13] (holding although no gun was ever recovered, evidence presented at trial that defendant "removed the gun from the glove compartment of his [vehicle], 'a relatively small space,' held it in one hand, and placed it in his lap, evidence that it was not large," and called weapon a "pistol" and a "handgun" was sufficient to establish weapon was less than lengths set forth in section 6102); **see also Commonwealth v. King**, 251 A.3d 1266, 1266 (Pa. Super. 2021) (eyewitness testimony that defendant "was holding the firearm with one hand seemingly waving it around, coupled with [the] characterization of the firearm as a 'pistol,' and absent any evidence of an exceptionally long barrel length," could permit a factfinder to reasonably "infer that the firearm's barrel length met the definition set forth in section 6102.").

In the instant case, sufficient evidence existed for the jury to reasonably conclude that the length of Charles's firearm did not exceed the limits set forth in section 6102. Although the firearm was never recovered, the firearm was clearly visible in Charles's right hand throughout the surveillance video played for the jury at trial. **See** N.T. Jury Trial, 11/8/21, at 361-362, 436-38. Moreover, we emphasize that Charles, himself, testified at trial that he had a firearm in his pocket the moment he exited his vehicle at the scene, and that he removed this firearm from his pocket during the physical altercation

---

[13] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.

between McLauren and Ferguson. *See id.*, at 436-38, 460-61. Detective Anthony Beatty, who arrived at the scene to identify, collect, and document any evidence following the shooting, stated that the firearm used by Charles was a semi-automatic pistol based on the shell casings collected at the scene. *See id.,* 11/6/21, at 93-96. Thus, the Commonwealth presented sufficient evidence to sustain Charles's conviction for carrying a firearm without a license, and we afford him no relief. *See King, supra; see also Brown, supra*.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2023