J-A12013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARRYL WOODARD | : | |
| | : | |
| Appellant | : | No. 1197 EDA 2024 |

Appeal from the PCRA Order Entered April 4, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0005204-2018

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.: **FILED SEPTEMBER 2, 2025**

Appellant, Darryl Woodard, appeals from an order denying his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. Appellant is presently serving a sentence of 9½ - 19 years' imprisonment based on his convictions for possession of a firearm by a prohibited person, carrying a firearm without a license, two counts of terroristic threats, possession of an instrument of crime and simple assault. We affirm.

The trial court summarized the evidence against Appellant as follows:

On June 7, 2018, members of the Upper Darby Township Police Department were dispatched to 245 Copley Road, Upper Darby, Delaware County, Pennsylvania following the report of a road rage incident involving an armed subject. A female caller[, Waltina White,] reported a black male operating a white Volvo SUV with possible Pennsylvania registration plate KMP-1333 had brandished a firearm at members of her family. The female caller reported the male left the scene in a white Volvo SUV in pursuit of her son[, Brendan Brown]. Marked Upper Darby Police units arrived on location and four victims stated the subject became irate because a car was blocking Copley Road making it impossible for his white

Volvo SUV to pass. The subject in the white Volvo exited his vehicle and was reported to have made a threat[en]ing statement while brandishing a handgun. [Specifically, Appellant, while pointing a firearm at White from an arm's length distance while she was standing in front of Brown, asked White if Brown was her son, and then stated, "I got something for this little motherfucker."]

Victim # 2, later identified as Brendan Brown, indicated that he briefly double-parked his mother's vehicle in front of her home while he ran inside her house, [Brown, who was visiting from Louisiana to attend his younger sister's graduation, had been bowling with the sister, Brenee Brown, and her friend, Kayla Stepteau. As Brown ran in the house, Brenee and Kayla were exiting the vehicle. Appellant began yelling obscenities at the girls and simulated ramming into them with his SUV.] When Brown came back out of the house, he heard Appellant yelling obscenities at White. Brown indicated that there was no need for Appellant's aggression and that he would move the vehicle. Appellant then stated, "this is Philadelphia." Brown replied that he was visiting from out of town. In response, Appellant went back to his vehicle and reached in the passenger door. Fearing for his safety, [Brown] drove his [mother's] vehicle from the scene followed by [Appellant] at a high rate of speed. [Appellant pulled his vehicle alongside the vehicle that Brown was driving. Brown then made a series of turns to evade Appellant.] Upper Darby Police Officer Louis P. Garay, Jr. together with Officer Michael Taylor were searching the area for the identified white Volvo SUV. While in the area of Walnut Street and Copley Road, Upper Darby Township, these officers observed a white Volvo XC90 SUV bearing Pennsylvania registration KNP-1333. Officer Garay activated his marked police vehicle's emergency lights and audible siren to conduct a vehicle stop. The male operator, later identified as [Appellant], stopped and exited the vehicle. A pat down was conducted for officer safety. Officer Garay observed in plain view the handle and magazine of a firearm protruding from beneath the passenger seat of the white Volvo SUV. The firearm was secured and [Appellant] was detained for investigation. The firearm recovered was a 9mm Taurus model PT92AVL, bearing serial # TXF84464. It was loaded with twenty-seven rounds of ammunition in an extended magazine.

\* \* \* \*

In this case, a DNA swab to procure DNA evidence from the gun was also conducted. The DNA swabs are sent to the Pennsylvania State Police Lab for analysis. . . The Pennsylvania State Police lab matched [Appellant's] DNA with the DNA located on the handgun recovered from the white Volvo X90 SUV[.]

Trial Court Opinion, 2/10/21, at 2-4, 13-14.

Following trial, a jury convicted Appellant of the offenses listed above. On September 23, 2020, the court imposed sentence. Appellant filed a timely appeal, and this Court affirmed his judgment of sentence. Appellant filed a timely *pro se* PCRA petition and subsequently filed an amended petition through counsel. On April 3, 2024, following an evidentiary hearing, the PCRA court denied relief. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal:

1. Whether the PCRA Court erred in denying Appellant's PCRA petition where Appellant was denied effective assistance of counsel, as guaranteed by the Pennsylvania and United States Constitutions, when Trial counsel failed to request video camera footage from Copley Road and surrounding streets from the night of the incident.

2. Whether the PCRA Count erred in denying Appellant's PCRA petition where Appellant was denied effective assistance of counsel as guaranteed by the Pennsylvania and United States Constitutions, when trial counsel failed to investigate the scene, interview neighbors and obtain any ring camera footage, or other photographic evidence from the area.

3. Whether the PCRA Court erred in denying Appellant's PCRA petition where Appellant was denied effective assistance of counsel, as guaranteed by the Pennsylvania and United States Constitutions, when Trial counsel failed to properly prepare for trial and failed to follow up on statements and requests made by Appellant, and only met with Appellant one time at the prison during his 21-month incarceration.

Appellant's Brief at 5-6.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020). Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018). We are bound by any credibility determinations made by the PCRA court where they are supported by the record. *Id.* However, we review the PCRA court's legal conclusions de novo. *Id.*

Appellant raises three claims of ineffective assistance in this appeal. A PCRA petitioner has the burden to "plead and prove" ineffective assistance of counsel "by a preponderance of the evidence." 42 Pa.C.S.A. § 9543(a). "Counsel is presumed to be effective and it is a petitioner's burden to overcome this presumption by a preponderance of the evidence." *Commonwealth v. Thomas*, 323 A.3d 611, 620 (Pa. 2024). "To succeed on

a claim of ineffective assistance of counsel, a petitioner must establish three criteria: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis for his or her action or inaction; and (3) that petitioner was prejudiced as a result of the complained-of action or inaction." *Id.* at 620-21. "The failure to satisfy any one of these criteria is fatal to the claim." *Id.* at 621. "To establish prejudice in the context of this standard, a petitioner must establish that there is a reasonable probability that the result of the proceeding would have been different but for the complained-of conduct." *Id.*

In his first two claims, Appellant contends that trial counsel was ineffective for failing to request video camera footage from Copley Road and surrounding streets from the night of the incident, investigate the scene, or interview neighbors. We address these claims together. The PCRA court found that trial counsel was not ineffective because "[t]rial counsel testified credibly that Appellant had not told him about the possible existence of video evidence," and "the assertion of the existence of video or photographic evidence by Appellant is merely speculative and cannot form a basis for an ineffective assistance claim." PCRA Opinion, 10/7/2024, at 11. We agree that the PCRA court properly rejected these claims.

The incident in this case occurred in more than one location. The altercation between Appellant and the victims started in front of 245 Copley Road, and trial testimony established that Appellant pursued Brendan Brown

on Copley Road, Long Lane, and Marshall Road after they both drove away from 245 Copley Road. Furthermore, the subsequent stop of Appellant's vehicle, which is when the firearm was recovered, occurred at the intersection of Copley Road and Pine Street. The only evidence offered by Appellant during the PCRA hearing to prove the existence of retrievable surveillance footage at the time of trial counsel's representation was Appellant's own self-serving testimony during the PCRA evidentiary hearing, along with five photographs of the intersection of Copley Road and Walnut Street, taken approximately five years *after* the incident, that depict what the appellant believes to be one surveillance camera. N.T., 11/29/2023, 12-73. Appellant also testified to his belief that certain unidentified residential properties in the area were equipped with surveillance cameras. *Id.* at 35-36.

The PCRA court properly rejected these claims as speculative. PCRA Opinion, 10/7/24, at 11. Appellant failed to present any evidence, other than his own conjecture, to prove that surveillance footage existed from any source, let alone that it would have been helpful to the defense. For example, he did not present testimony regarding who was responsible for operating the alleged camera on Copley Road, whether the camera took still photographs or video, whether any captured images could have been preserved for trial, or whether the alleged surveillance footage was preserved and recoverable when trial counsel assumed stewardship of his case. Nor did he introduce any evidence concerning the specific addresses of residential properties where

video surveillance supposedly could have been obtained or provide any evidence concerning the property owners from whom the alleged surveillance footage could have been obtained. Furthermore, there was no testimony from any other witnesses, private or public, to establish that there were working cameras that would have recorded the precise locations where the incident took place. It is also possible that, if useful surveillance footage was available, it would have inculpated Appellant by corroborating the trial testimony of the Commonwealth's witnesses.

Appellant also failed to show prejudice, *i.e.*, there was a reasonable probability that the outcome of his trial would have been different had trial counsel procured surveillance video footage. The Commonwealth presented, and the jury accepted, overwhelming testimony regarding Appellant's use and possession of the firearm, corroborated by evidence that Appellant's DNA was found on the recovered firearm.

For these reasons, Appellant's first two claims of ineffectiveness fail due to lack of arguable merit and absence of prejudice.

Appellant's final claim is that trial counsel was ineffective for meeting with him only once at the prison before trial. The PCRA court properly determined that this claim lacks arguable merit. A claim regarding the quality and frequency of counsel's interaction with Appellant provides no basis for relief. In its memorandum opinion, the lower court recognized that the Appellant admitted during the PCRA hearing to having met with trial counsel

"10 or 11 times in the holding cell at the courthouse[,]" and that the location of their meetings was "immaterial."  PCRA Opinion, 10/7/24, at 12; *see also* N.T., 11/29/23, at 30 (Appellant's admission).  The lower court correctly recognized that Appellant "failed to articulate how more meetings would have affected the outcome of the trial."  PCRA Opinion, 10/7/24, at 12; *see also* *Commonwealth v. Harvey*, 812 A.2d 1190, 1196-97 (Pa. 2002) ("[I]t is well-settled that the amount of time an attorney spends with his client before trial is not, by itself, a legitimate basis for inferring the total extent of counsel's pretrial preparation, much less the adequacy of counsel's preparation").

Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/2/2025