J-S20028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES THOMAS SMITH | : | |
| | : | |
| Appellant | : | No. 747 WDA 2021 |

Appeal from the PCRA Order Entered June 9, 2021
In the Court of Common Pleas of Armstrong County
Criminal Division at CP-03-CR-0000532-2016

BEFORE: NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.: **FILED: February 27, 2024**

James Thomas Smith (Appellant) appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Following remand for the appointment of new counsel for Appellant, the matter is before us for review. After careful consideration, we affirm.

FACTS

This Court previously summarized the facts underlying Appellant's convictions:

> Appellant and the victim had a three-year romantic relationship that was fraught with Appellant's manipulative and controlling behavior, including erratic temper tantrums and threats of violence toward the victim and her children. The relationship ended in 2012, and in 2013, the victim obtained a Protection from Abuse Order ("PFA"), which was effective from August 2013 through August 2016. The PFA prohibited Appellant from having

any contact with the victim, her children, and her parents; it also excluded Appellant from the victim's residence. Despite the PFA, Appellant continued to contact the victim, and made multiple threats to the victim and her children.

On June 24, 2016, Appellant saw the victim with another man at an ice cream store, and confronted her, stating "I told you what would happen if I ever saw you with anyone, and this is not done. I promise you tonight this will be done. I promise you that it will be over." N.T. Trial, 10/11/17, at 55. Throughout that evening, Appellant sent the victim numerous text messages and voicemails. Appellant also parked his car approximately one half mile from the victim's house, and sat in the woods watching her house all evening.

At approximately 3:00 AM on June 25, 2016, Appellant broke into the victim's home using a pipe wrench. He then entered her bedroom, and locked the bedroom door. The victim went to the bathroom at one point with her cell phone and texted the neighbors for help. When she returned to the bedroom, Appellant raped her. After several hours, Appellant took the victim's cell phone, told her to lie if anyone asked why her door frame was broken, and forced her to drive him to his car.

***Commonwealth v. Smith***, 220 A.3d 641, 917 WDA 2018 (Pa. Super. 2019) (unpublished memorandum at 1) (footnote omitted).

PROCEDURAL HISTORY

On October 13, 2017, a jury convicted Appellant of rape, involuntary deviate sexual intercourse, burglary, aggravated indecent assault, criminal trespass, criminal mischief, and kidnapping.[1] On December 19, 2017, the trial court sentenced Appellant to an aggregate 18 to 36 years in prison. On July

---

[1] 18 Pa.C.S.A. §§ 3121(a)(2), 3123(a)(2), 3502(a)(1), 3125(a)(3), 3503(a)(ii), 3304(a)(5), and 2901(a)(2).

9, 2019, this Court affirmed his judgment of sentence. **Smith**, **supra**. Appellant did not seek review with the Pennsylvania Supreme Court.

On July 8, 2020, Karissa Murphy, Esquire, filed a PCRA petition on Appellant's behalf.[2]  In the petition, Appellant claimed ineffective assistance of trial counsel: Blaine Jones, Esquire, and Nicole Nino, Esquire.[3]  The PCRA court held an evidentiary hearing on January 29, 2021.  Appellant testified and presented testimony from Attorney Jones, Attorney Nino, Linda Smith (Appellant's mother), and Danny Libengood (Appellant's cousin).  The Commonwealth did not call additional witnesses.  At the close of evidence and at the request of Attorney Murphy, the PCRA court ordered the parties to submit post-hearing briefs.  On June 9, 2021, the PCRA court entered an order and memorandum denying relief.

Attorney Murphy timely filed a notice of appeal on Appellant's behalf, and successfully petitioned to withdraw from her representation of Appellant. This Court ultimately remanded to the PCRA court for the appointment of new counsel.  **Commonwealth v. Smith**, 283 A.3d 382, 747 WDA 2021 (Pa.

_____

[2] The trial court docket incorrectly indicates that trial counsel, Blaine Jones, Esquire, filed the PCRA petition.  The docket correctly indicates Attorney Murphy entered her appearance for Appellant 12 days later, on July 20, 2020.

[3] Attorney Nino worked with Attorney Jones at Blaine Jones Law, LLC. **See** PCRA Court Memorandum, 6/9/21, at 4.  On August 4, 2017, both counsel entered their appearance on Appellant's behalf. **Id.**

Super. 2022) (unpublished memorandum at 8). We directed appointed counsel to file a new Pa.R.A.P. 1925(b) concise statement.

Relevant to this appeal, on August 29, 2022, Zachary Gelacek, Esquire, entered his appearance on behalf of Appellant. After numerous extensions, Attorney Gelacek filed a Pa.R.A.P. 1925(b) concise statement on March 27, 2023, challenging the PCRA court's ruling on Appellant's ineffective assistance of trial counsel claims. The PCRA court filed a supplemental opinion on April 3, 2023.

On October 23, 2023, this Court ordered the appointment of new PCRA counsel for Appellant. The PCRA court complied, appointing Lisa C. Peluso, Esquire, to represent Appellant in this appeal. Attorney Peluso has filed an appellate brief on behalf of Appellant; the Commonwealth has filed a responsive brief. The matter is now properly before us for review.

Appellant presents the following issues:

I.     Whether the trial court erred in denying the PCRA petition and finding trial counsel was not ineffective where Appellant's trial counsel failed to adequately prepare for trial?

II.    Whether the trial court erred in denying the PCRA petition where trial counsel was ineffective for their unprofessional conduct and in failing to protect Appellant's interests?

Appellant's Brief at 7 (capitalization modified).

In reviewing an order denying a PCRA petition, our standard of review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal

error." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation and internal quotation marks omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Mitchell***, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Appellant's issues assert the ineffective assistance of counsel. We presume counsel to be effective:

> To establish ineffectiveness, a petitioner must plead and prove the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner. Counsel's actions will not be found to have lacked a reasonable basis unless the petitioner establishes that an alternative not chosen by counsel offered a potential for success substantially greater than the course actually pursued. Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different.

***Commonwealth v. Brown***, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citation omitted).

Appellant first claims trial counsel rendered ineffective assistance by not interviewing and securing witnesses for trial. Appellant's Brief at 15. Appellant explains that Attorney Jones was supposed to represent him at trial. ***Id.*** at 11. However, one month prior to trial, he was informed that Attorney Nino would represent him. ***Id.*** Appellant states, although he provided Attorney Nino with Appellant's list of requested witnesses, she failed to contact

them. *Id.* Rather, only Smith contacted these witnesses. *Id.* Appellant further asserts Attorney Nino met with him just once prior to trial. *Id.*

"The amount of time an attorney spends consulting with [her] client before trial is not, by itself, a legitimate basis for inferring the total extent of counsel's pretrial preparation, much less the adequacy of counsel's preparation." *Commonwealth v. Harvey*, 812 A.2d 1190, 1196-97 (Pa. 2002). With this in mind, we review the evidence presented at the PCRA evidentiary hearing.

Attorney Nino testified that she had prepared for Appellant's trial with Attorney Jones. N.T., 1/29/21, at 25-26. Attorney Nino stated,

> [Appellant and Attorney Nino] spoke a lot on the phone. I have a lot of messages, a lot of emails, a lot of all that, but I do know [Appellant] came in before trial, probably the month before trial at least, for hours. I don't know exactly how many days, though, but I know that we prepped his case together.
>
> ….
>
> … The month prior to trial was when [Appellant] came in. You know, we have a lot of cases. … I don't tend to prep jury trials or even nonjury trials … physically prep them [,] … talk about direct examination, those sorts of things, until about a month before.
>
> I felt like if I try to prep witnesses and stuff like that too far ahead of time, then that's not sufficient for them to testify at trial. So that's my point, [Appellant] came in – the last time I remember he came in for hours was within a month before trial in my recollection. That's my recollection.
>
> ….
>
> … I do know that [Appellant] requested that I be the attorney. I was not planning – even though I was prepping the case the whole time with [Attorney Jones] …, it was not my intention to be lead

- 6 -

counsel on that case, because I did not prep it as if I was trying it before September. The other attorneys worked on it. I was not a part of it before [Appellant] had requested that I be the one.

We had a bunch of conversations about former sex cases that I had and … he told me at least, that he would like me[,] being the female partner[,] to be the one to try the case. I believe that was early September.

I believe there is an email to that effect shortly after him and I discussed it, and then that's when I became lead counsel and that's when we started meeting in person a lot more and prepping for trial.

*Id.* at 28-29.

The PCRA court rejected Appellant's ineffectiveness claim based on Attorney Nino's lack of trial preparation:

Attorney Nino testified that she typically does not prepare for jury trials far in advance so that the case is fresh in the minds of her clients and witnesses. N.T., 1/29/21, at 28. She further testified that 1) other attorneys at her firm had worked on [Appellant's] case prior to her becoming lead counsel, 2) she spoke with [Appellant] extensively on the telephone, 3) she prepared for trial without [Appellant] being present, and 4) less preparation for trial was necessary because [Appellant], by his own choice, was not going to testify. N.T., 1/29/21, at 26-30….

PCRA Court Opinion, 6/9/21, at 8-9. The PCRA court found "that Attorney Nino's trial preparation was neither unreasonable nor lacking in diligence." *Id.* The PCRA court's finding is supported in the record, *see* N.T., 1/29/21, at 26-30 (wherein Attorney Nino described her trial preparation), and we discern no abuse of the court's discretion in rejecting Appellant's ineffectiveness claim based upon counsel's lack of preparation. *See* PCRA Court Opinion, 6/9/21, at 8-9; *see also Harvey*, 812 A.2d at 1196-97.

- 7 -

In conjunction with Appellant's claim regarding Attorney Nino's lack of preparation, he asserts Attorney Nino was ineffective for not calling Danny Libengood (Libengood) as a fact witness. Appellant's Brief at 16. Appellant claims Libengood would have testified Appellant and the victim had an ongoing relationship, "even sneaking around during the pendency of a Protection From Abuse Order that was filed against [Appellant]." *Id.* Appellant claims this evidence would have been critical to his defense of consent. *Id.*

Appellant acknowledges Attorneys Jones and Nino testified they did not recall a list of witnesses. *Id.* Nevertheless, Appellant argues they rendered ineffective assistance by presenting no witnesses on his behalf. *Id.* According to Appellant, there is no reasonable basis for his counsel's failure, asserting "[t]he outcome of the trial would likely have been different had [Attorney] Nino investigated and interviewed witnesses[,] as the evidence presented was basically just that of" the victim and Appellant. *Id.* Appellant contends that testimony regarding the victim's actions, before and after the rape, were critical to his defense. *Id.* at 17.

To establish that counsel was ineffective for failing to call a potential witness, a PCRA petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009) (citation omitted). To demonstrate prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012) (citation omitted). "Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense." *Id.* (citation omitted). Further, the failure to call a witness "is not *per se* ineffective assistance of counsel[,] for such decision usually involves matters of trial strategy." *Id.* (citation omitted). "Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable[.]" *Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000).

At the PCRA hearing, Libengood testified that he has known Appellant for "[f]orty some years." N.T., 1/29/21, at 120. Libengood confirmed he was available and willing to testify on Appellant's behalf. *Id.* at 121. He stated Appellant's attorneys never contacted him about testifying on Appellant's behalf. *Id.*

On cross-examination, Libengood acknowledged Appellant had discussed with him "[b]its and pieces" of the underlying incident. *Id.* at 122. Libengood stated he would have testified Appellant has "been a good person all his life. In trouble a couple times." *Id.* at 123. Although Libengood stated

he would testify as to Appellant's propensity for nonviolence, he admitted he was aware Appellant had broken into the victim's home through the back door. *Id.* Appellant presented no further testimony from other potential witnesses.

The PCRA court rejected Appellant's claim of ineffectiveness based upon the failure to present potential witnesses:

> [Appellant] argues that all of the potential witnesses he presumably would have called to testify on his behalf would have bolstered his allegations that the sex between he and [the victim] was consensual, that they had an ongoing relationship prior to the incident, and that [the victim's] testimony was not credible. However, as is evident from the trial testimony, the nature of [Appellant's] relationship with [the victim] was explored thoroughly at trial, particularly by Attorney Nino in a vigorous cross-examination. [Appellant's] own testimony and the text messages between him and [the victim] clearly established the history between the two, which was not materially in dispute. Because the testimony of the additional witnesses would have been cumulative, any failure of Attorney Nino to contact those individuals and secure their testimony was reasonable and, in any event, resulted in no prejudice to [Appellant]. *See Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008); N.T., 1/29/21, at 33-34.

PCRA Court Opinion, 6/9/21, at 10. The PCRA court's reasoning is supported in the record, and its legal conclusion is sound. *See id.*; *see also* N.T., 1/29/21, at 123 (wherein Libengood acknowledged Appellant had been in trouble "a couple times" and had broken into the victim's home). Accordingly, Appellant's claim based on trial counsel's failure to present Libengood's testimony merits no relief. *See id.* As Appellant offered no other potential witness's testimony, he is not entitled to relief as to counsel's failure to secure additional fact witnesses. *See Johnson*, 966 A.2d at 536.

- 10 -

In his second issue, Appellant argues the PCRA court improperly denied his ineffectiveness claim based on trial counsel's failure to present character witnesses. Appellant's Brief at 17. In particular, Appellant identifies Libengood and Smith as potential character witnesses. *Id.* Appellant argues "no reasonable basis exists for either [Attorney] Jones or [Attorney] Nino to fail to interview the potential character witnesses." *Id.* at 18. According to Appellant, he provided the names of several witnesses who would testify regarding his reputation in the community. *Id.* Appellant points out he had no criminal record. *Id.* Appellant directs our attention to this Court's holding in *Commonwealth v. Weiss*, 606 A.2d 439 (Pa. 1992). Appellant's Brief at 18. According to Appellant, under similar circumstances, our Supreme Court in *Weiss* concluded that the defendant's trial counsel had no reasonable basis for not presenting character witnesses, "where counsel performed a limited investigation into the quantity and/or quality of character witnesses and counsel had unreasonable prejudice towards familial witnesses." *Id.*

Appellant claims this Court granted relief in a similar case, *Commonwealth v. Hull*, 982 A.2d 1020 (Pa. Super. 2009). Appellant's Brief at 19. According to Appellant, in *Hull*, this Court "found it was not reasonable for trial counsel to not present any character witnesses where the defendant had no prior criminal record and, as here, it was defendant's word against that of the victim." *Id.*

Appellant disputes Attorney Nino's testimony that she had discussed character witnesses with Appellant, and he provided only his mother's name as a potential witness. *Id.* Appellant claims he provided Attorney Nino with a list of character witnesses, which included Libengood. *Id.* Appellant states his mother and Libengood both testified at the PCRA hearing that they were available and willing to testify, and were familiar with Appellant's character and reputation in the community. *Id.*

"Failure to present available character witnesses may constitute ineffective assistance of counsel." *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa. Super. 2001). A defendant may introduce evidence of his character traits that are relevant to a crime charged. *See* Pa.R.E. 404(a). Pennsylvania Rule of Evidence 608 addresses the admissibility of character evidence:

> **(a)** Reputation Evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.
>
> **(b)** Specific Instances of Conduct. Except as provided in Rule 609 (relating to evidence of conviction of crime),
>
>> **(1)** the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; however,
>>
>> **(2)** in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not

- 12 -

including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

Pa.R.E. 608.

In a rape case, admissible evidence of the defendant's relevant character traits may include evidence of traits such as "non-violence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order." *Commonwealth v. Radecki*, 180 A.3d 441, 454 (Pa. Super. 2018) (citation omitted). "[I]n a case where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility." *Harris*, 785 A.2d at 1000.

At the PCRA hearing, Smith testified that, at the last hearing before trial, Attorney Jones indicated he would not be available on the scheduled trial date. N.T., 1/29/21, at 107. Smith confirmed Attorney Jones's representation that someone from his office would appear at trial. *Id.* According to Smith, Attorney Nino met with Appellant only one week prior to trial. *Id.* Smith testified she had not discussed testifying as a character witness with Appellant. *Id.* at 108. According to Smith, she was willing and available to testify and, in fact, attended the trial. *Id.* Smith stated Attorney Nino never asked Smith to testify. *Id.* at 109.

On cross-examination, Smith confirmed she was present at a meeting between Attorney Nino and Appellant, where they discussed character

- 13 -

evidence. *Id.* at 113. Smith stated, "There were some names mentioned …

that … would be able to testify or would know the story behind everything,

basically." *Id.* According to Smith, those names were provided to Attorney

Nino. *Id.* Smith identified Libengood, Jason Zimmerman, and Richard

Klingensmith as potential witnesses. *Id.* at 114.

Attorney Nino testified regarding her discussions with Appellant about

potential character witnesses:

> [Attorney Nino:] … I asked him about character witnesses. The
> only one he could provide to me was his mother, and we discussed
> whether we should call mom or not call mom. As you are aware,
> character goes to veracity and peacefulness in the community.
> It's not her knowing him, but it's the reputation. I will say, I even
> talked to mom about it. Mom did not feel super comfortable.
>
> ….
>
>      … I do recall specifically talking to [Appellant's] mother even
> during the trial about her being a character witness. Even in the
> hallway we discussed it, because again that's the only one that he
> put forward. He didn't have a lot of support.
>
>      Quite frankly, the more that we had talked, I had learned of
> things that could have been difficult for a character witness even
> to be cross-examined on. I know he was a zero prior record score,
> but he had an ex-wife and kids and whatnot that were not willing
> to – you know, his mother is the only one he could come up with.
>
>      We talked about putting mom up versus maybe putting up
> like a preacher or somebody in the community and he did not
> provide me with anyone other than his mother. And then at that,
> it was a discussion in my recollection that we both made about
> mom not being a good character witness.
>
> ….
>
>      It wasn't even just my conclusion. It was something I
> discuss with all clients, because I obviously leave that up to them.

- 14 -

[Appellant] broke into the [victim's] house, which in itself is not a nonviolent activity, and so I was concerned that mom might be questioned about that in particular. [Appellant] and I talked about her being nervous to testify or to say anything, really. … I have multiple text messages from her. She is just a nervous person about the trial, about everything, and he in my recollection didn't want to drag her into the quote/unquote trial is basically where he was.

And we talked about, too, how people feel about when … your mother is the one that takes the stand to be your character witness. … I'm not so sure how strong that makes an impression on a jury in my personal opinion, but we talked about the ups and downs of it, and he just decided that he didn't want to call mom. And that's my recollection.

I don't recall if he said anybody else and then we decided against them. I can't recall that. … I know we definitely discussed character witnesses, and I know I discussed it with mom in the courthouse specifically, too.

*Id.* at 30-32.

The PCRA court resolved the conflicts in testimony:

Attorney Nino testified, the [c]ourt believes credibly, that she believed that [Appellant] was not going to testify at trial, chiefly because he did not dispute that he had broken into [the victim's] home just prior to the sexual incident giving rise to his charges and convictions. *See* N.T., 1/29/21, at 26-27; Pa.R.E[.], 608(b)(2). The [c]ourt finds [Appellant's] testimony that the burglary was not discussed with him to be not credible. Attorney Nino indicated to the jury in her opening statement, before [Appellant] appeared for trial later that day, that he would not be testifying. N.T., 10/11/17, at 39:7-11. Although [Appellant] ultimately did testify at trial, there is no evidence that the Commonwealth introduced or attempted to introduce evidence of [Appellant's] reputation for dishonesty. Thus, even assuming that [Appellant] had provided a list of character witnesses to Attorney Jones or Attorney Nino, their testimony would have been irrelevant and inadmissible under Pa.R.E[.] 608(a).

PCRA Court Opinion, 6/9/21, at 13.

- 15 -

The PCRA court further opined,

[u]nder [Pa.R.E.] 404(a)(2)(A), the only pertinent trait that any character witnesses would be able to address would be [Appellant's] reputation in the community for law-abiding, non-violent behavior. Attorney Nino testified that the only character witness presented to her by [Appellant] was his mother. She testified that she ultimately decided not to call any character witnesses because [Appellant's] Mother was not comfortable testifying and because of the potential incidents of violent behavior in [Appellant's] past that could be brought up to rebut the character testimony. *See* N.T., 1/20/21, at 30-32. Although [Appellant's] mother testified at the PCRA hearing that she would have testified on [Appellant's] behalf, nowhere did she indicate that she would have testified to his character in the community for law-abiding, non-violent behavior. N.T., 1/29/21, at 108-109.

Moreover, even assuming that [Appellant] presented a list of potential character witnesses to Attorney Jones and Attorney Nino, only one of these potential witness, Danny Libengood, testified at the PCRA hearing. Mr. Libengood, [Appellant's] cousin, indicated that he would have testified to the relationship between [Appellant] and the alleged victim, together with [Appellant's] propensity for nonviolence. **Mr. Libengood admitted to not having much knowledge of [Appellant's] reputation for nonviolence in the community.** N.T., 1/29/21, at 119-124. *See Commonwealth v. Van Horn*, 797 A.2d 983, 987-88 (Pa. 2002) (proffered character witnesses' potential testimony regarding their own experience with the defendant and their perceived relationship between the defendant and the alleged victim not valid character testimony about the defendant's reputation in the community). It also was not contested in the record that [Appellant] broke in to the alleged victim's home and broke the doorframe of the entrance. Because cross-examination of character witnesses is not limited to prior convictions, the attorney for the Commonwealth no doubt would have cross[-]examined Libengood and any other character witness regarding the incident, discrediting their testimony to [Appellant's] reputation for nonviolence. Attorney Nino's decision to not call [Appellant's] mother or any other character witnesses therefore was not based on oversight or false assumptions, but rather on a reasonable conclusion that the value of any such testimony would be outweighed by damaging impeachment of those witnesses'

testimony. [Appellant] has failed to establish either that this claim has arguable merit or that it prejudiced him.

*Id.* at 14-15 (emphasis added). Thus, the PCRA court found Attorney Nino, in fact, discussed character witnesses with Appellant and made a strategic decision regarding the value of potential character testimony. "Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable[.]" ***Basemore***, 744 A.2d at 735.

On review, the PCRA court's findings are supported in the record and we discern no error or abuse of discretion. ***See*** PCRA Court Opinion, 6/9/21, at 13-15. Moreover, we cannot and will not disturb the PCRA court's credibility determinations. ***See Commonwealth v. Hand***, 252 A.3d 1159, 1165 (Pa. Super. 2021) ("the PCRA court's credibility determinations, when supported by the record, are binding on this Court[.]"). Appellant's claim warrants no relief.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/27/2024