J-S06010-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ROBERT JEFFERY BAILOR :
:
Appellant : No. 1095 WDA 2025

Appeal from the PCRA Order Entered August 6, 2025
In the Court of Common Pleas of Clearfield County Criminal Division at
No(s): CP-17-CR-0001156-2021

BEFORE: KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: May 26, 2026**

Robert Bailor appeals from the order denying his first petition filed

pursuant to the Post Conviction Relief Act (PCRA). 42 Pa.C.S.A. §§ 9541-46.

We affirm.

The PCRA court previously detailed the pertinent facts and prolonged

procedural history of this case in its Appellate Rule 1925(a) opinion filed in

response to Bailor's direct appeal:

> On August 25, 2020, a criminal complaint was filed against
> [Bailor]. The charges originate from an incident that occurred on
> August 24, 2020. On [that date], between 9:30 a.m. and 10:00
> a.m. Donald McGonigal (hereinafter the "Victim") exited his
> vehicle in front of his residence [on] Claredon Avenue, Lawrence
> Township, Clearfield County. As the Victim exited his vehicle
> [Bailor] approached the Victim with a knife. [Bailor] stabbed the

_____

[*] Former Justice specially assigned to the Superior Court.

Victim two (2) times in the back of the neck and three (3) times in the stomach.

At 10:50 a.m., that same day, Pennsylvania State Trooper David Patrick (hereinafter "Trooper Patrick") interviewed the Victim at Penn Highlands Clearfield Hospital. The Victim related to Trooper Patrick that he pulled into his driveway at his residence, got out of his vehicle, when a guy known to him as Bobby or Robert Bailor came running at him. The Victim stated that [Bailor] said, "don't you ever fuck with my family." The Victim then stated that [Bailor] then started swinging at him with a knife at the back of his neck.

A preliminary hearing was originally scheduled for August 31, 2020, however said hearing did not occur until November 17, 2021, and the charges were held for court.[1] [Bailor] also signed an arraignment waiver form on [that date]. [Bailor] was charged, by Information, with [attempted murder and related charges]. On December 14, 2021, [Bailor] filed a motion for extension of time to file omnibus pretrial motion and [the trial] court issued an order to show cause why the requested relief should be granted. Following the presentation of the motion for extension of time to file omnibus pretrial motion, [Bailor's] motion was granted by [the trial] court on January 10, 2022.

[1][Bailor's] preliminary hearing was continued a total of eight (8) times, primarily due to [Bailor's] unavailability related to different psychiatric evaluations.

On January 20, 2022, following a pre-trial conference, an order was issued scheduling jury selection for April 7, 2022 and trial for May 10 and 11, 2022. [Bailor] filed a notice of defense of Insanity or Mental Infirmity on April 5, 2022. The Commonwealth subsequently filed a motion for continuance pursuant to [Criminal] Rule 568(B)(1) on April 5, 2022; the same was granted and [Bailor's] jury selection was cancelled and rescheduled for August 11, 2022. On June 2, 2022, [Bailor] filed a *pro se* motion for dismissal, said motion was denied on June 16, 2022. On July 14, 2022, following a pre-trial conference, [the trial] court issued an order scheduling jury selection for August 11, 2022 and trial for October 6 and 7, 2022.

On September 30, 2022, [Bailor] filed a *pro se* motion for ineffective counsel. The Commonwealth filed a petition to establish [Bailor's] competency to stand trial on October 3, 2022. On October 4, 2022, following a hearing on [Bailer's] *pro se*

motion for ineffective counsel, [Bailor] requested permission to withdraw his motion and proceed with his current representation. [The trial] court also, at that time, conducted a colloquy of [Bailor] and believed [Bailor] was competent to stand trial and to make the decision to withdraw his motion. [Bailor's] request was then granted. [Bailor], through counsel, and the Commonwealth filed their proposed points for charge on October 6, 2022. The case went to trial on October 6 and 7, 2022. At the end of the trial, the jury delivered a verdict of guilty but mentally ill of all the charged offenses.

[Bailor] was scheduled to be sentenced on December 5, 2022, however, [the trial] court granted [Bailor's] request for a continuance for further mental health evaluation and sentencing was rescheduled for January 9, 2023. On [that date] sentencing was continued until sentencing court in February 2023 due to the fact that the reports regarding the mental health evaluation were not yet completed. On February 13, 2023, sentencing was continued . . . upon [Bailor's] request, in order for [Bailor] and counsel to explore the possibility of hiring a defense evaluator. On February 17, 2023, [Bailor] filed a second motion for ineffective counsel and a hearing was scheduled on the motion for March 13, 2013. On March 14, 2023, following the presentation by [Bailor] of the *pro se* motion for ineffective counsel and [trial] counsel's request to withdraw his appearance, [the trial court] colloquied [Bailor] and was satisfied that he [] knowingly, intelligently, and voluntarily agreed with the withdrawal of [trial] counsel. [The trial court] issued an order reflecting [trial] counsel's withdrawal and [Bailor's] agreement therewith on March 14, 2023.

Trial Court Opinion, 3/11/24, at 1-3 (italics added; footnotes and excess capitalization omitted).

Thereafter, the trial court appointed a public defender and granted two subsequent requests to continue sentencing. Ultimately, on July 10, 2023, the trial court imposed an aggregate sentence of 14 to 28 years of imprisonment, plus a consecutive one-year term of reentry probation. The trial court also determined that Bailor was not severely mentally disabled and

in need of treatment pursuant to the provisions of the Mental Health Procedures Act[1] and that it was inappropriate for Bailor to be returned to Torrance State Hospital.

Bailor filed a post-sentence motion for modification of sentence. On December 12, 2023, the trial court granted Bailor's motion to the extent it entered an amended sentence finding that Bailor's two aggravated assault counts merged with his attempted homicide conviction; Bailor's aggregate sentence did not change. Bailor appealed. On September 13, 2024, this Court affirmed Bailor's judgment of sentence. ***Commonwealth v. Bailor***, 328 A.3d 502 (Pa. Super. 2024) (non-precedential decision). Bailor did not seek further review.

Bailor filed a *pro se* PCRA petition on November 25, 2024, in which he raised claims on ineffective assistance of trial counsel. The PCRA court appointed counsel, and, on March 21, 2025, PCRA counsel filed an amended petition. The PCRA court held an evidentiary hearing on May 23, 2025, at which both Bailor and trial counsel testified. By order entered August 6, 2025, the PCRA court denied Bailor's amended petition. This appeal followed. Both Bailor and the PCRA court have complied with Appellate Rule 1925.

Bailor raises the following two issues on appeal:

---

[1] 50 P.S. §§ 7101-7503.

1. Whether the PCRA Court erred by denying relief on [Bailor's] claim that trial counsel provided [Bailor] with ineffective assistance by failing to adequately prepare for trial?

2. Whether the PCRA Court erred by denying relief on [Bailor's] claim that trial counsel provided [Bailor] with ineffective assistance by failing to adequately cross-examine the Commonwealth's witnesses at trial?

Bailor's Brief at 4.[2]

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

Both of Bailor's issues challenge the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.***

---

[2] On January 7, 2026, this Court received a letter from the Commonwealth in which it stated that it would not be filing an appellate brief, but rather, would rely on the PCRA court's opinion.

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

In his first ineffectiveness claim, Bailor asserts that trial counsel failed to "adequately prepare for trial by failing to meet with [him] during the pre-trial process and leading up to trial." Bailor's Brief at 7. He further asserts that trial counsel "failed to gather evidence that could have proved his whereabouts on the day in question." *Id.* This claim fails.

Initially, is well settled that the "mere shortness of time for a defendant to confer with his counsel before trial does not constitute ineffective assistance of counsel." **Commonwealth v. Robinson**, 334 A.2d 687, 688 (Pa. Super. 1975). Rather, in order to establish arguable merit to such a claim, the PCRA petitioner must identify specific issues of merit counsel should have raised or what beneficial information counsel would have learned had he consulted further with his client. **See**, **e.g. Commonwealth v. Harvey**, 812 A.2d 1190, 1197 (Pa. 2002), *abrogated on other grounds,* **Commonwealth v. Elliott**, 80 A.3d 415 (Pa. 2023).

Here, the PCRA court first found Bailor's claim lacked arguable merit. The court explained:

> [Bailor] alleged that [trial counsel] was ineffective in his pre-trial preparation because he only met with [Bailor] on a handful of occasions. [Bailor] testified at the PCRA hearing that he only met with [trial counsel] at the Clearfield County Jail on a couple of occasions between the November 2021 preliminary hearing and the October 2022 trial. Both [trial counsel] and [Bailor] testified at the PCRA hearing that they could not recall the specific dates or the specific amount of times that they met. However, [trial counsel] maintained that he met with [Bailor] prior to the preliminary hearing, that he filed competency motions as a result of those meetings, and that he reviewed discovery with [Bailor] prior to jury selection. [Trial counsel] also testified that his trial strategy was to focus on [Bailor's] mental health to negate guilt rather than to focus on whether [Bailor] did or did not commit the act. This assertion is supported by the multiple continuances in [Bailor's] case due to competency and mental health evaluations.
>
> [Bailor's] allegation against [trial counsel's] pre-trial preparation fails the first prong of ineffectiveness of counsel as there is no merit to this claim . . . . [T]he sole amount of contact between a client and counsel is not enough to support a finding of

ineffectiveness; thus [Bailor] does not have arguable merit on this claim.

PCRA Court Opinion, 8/6/25, at 3-4 (excess capitalization omitted).

The PCRA court further explained that, even if there was arguable merit to Bailor's ineffectiveness claim, Bailor did not provide sufficient evidence to establish the other two prongs of the ineffectiveness test. The Court stated:

Specifically, [Bailor] has not established that [trial counsel] did not have a reasonable basis for his specific pre-trial preparation or amount of contact with [Bailor]. Counsel's chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. [Trial counsel's] trial strategy focused on [Bailor's] mental health as a notice of defense of insanity or mental infirmity was filed. [Bailor] testified that his contact with [trial counsel] primarily involved the signing of documents for continuances. These continuances were for competency tests, an important factor in [counsel's] trial strategy. Based on these facts, and [Bailor's] failure to prove otherwise, [trial counsel] had a reasonable basis for his pre-trial preparation and contact with [Bailor].

[Bailor] also failed to prove that he suffered any prejudice as a result of [trial counsel's] pre-trial preparation. Specifically, [Bailor] did not prove that his trial would have resulted differently had [trial counsel's] pre-trial preparation been different or if [Bailor] had had additional contact with [trial counsel]. Trial strategy is not measured through hindsight against alternatives not pursued, so long as trial counsel had a reasonable basis for the decision he made. It has been established that [trial counsel] had a reasonable basis for his trial strategy and [Bailor] did not present sufficient evidence to prove that his trial would have resulted in a different verdict had [trial counsel] pursued a strategy focused on [Bailor's] actions on the day of the incident or on a "who done it" approach. Although [Bailor] did file a motion for ineffective counsel right before his trial . . . [Bailor] voluntarily withdrew the motion on the record. Therefore, based on [Bailor's] failure to satisfy any of the three prongs [of the ineffectiveness test], his first allegation of ineffective assistance of counsel for

[trial counsel'] pre-trial preparation and contact with [Bailor] will be DENIED.

PCRA Court Opinion, 8/6/25, at 4-6 (citations and excess capitalization omitted).

Our review of the PCRA hearing transcript as well as the entire record amply supports the PCRA court's conclusions. As to credibility of the witnesses at the PCRA hearing, the PCRA court believed trial counsel's version of the contested facts. We cannot disturb this determination. *See Commonwealth v. Harmon*, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

Moreover, as established by the detailed procedural history provided by the court above, *see supra*, the adequacy of trial counsel's pre-trial preparation cannot be measured solely by the number of contacts he had with Bailor. Finally, in hindsight, merely because the jury chose to believe the Commonwealth's assertion that Bailor was guilty but mentally ill over the defense's claim that Bailor was legally insane on the date of the incident, as supported by expert testimony, does not establish ineffectiveness. *Sandusky*, *supra*. Because we agree with the PCRA court that Bailor failed to meet his burden, Bailor's first issue on appeal does not entitle him to post-conviction relief.

In his remaining issue, Bailor claims that trial counsel was ineffective in failing to adequately cross-examine "the victim, the victim's neighbor, and the

Commonwealth's DNA expert." Bailor's Brief at 7. Bailor claims he "provided trial counsel with inconsistencies in witness testimony that trial counsel failed to explore." *Id.*

We note that "[t]he scope and vigor of cross-examination falls within the ambit of sound trial strategy to be exercised by trial counsel alone." *Commonwealth v. Molina*, 516 A.2d 752, 757 (Pa. Super. 1986) (citation omitted). In support of his claim, Bailor first provides examples of multiple perceived inconsistencies involving the prior statements and the trial testimony given by the victim and William Larson, the victim's neighbor. *See* Bailor's Brief at 12-15.

The PCRA court rejected Bailor's claims regarding these two witnesses by concluding that Bailor failed to prove any of the three prongs of the ineffectiveness test. The Court first summarized Bailor's assertions as to each witness when compared to its review of the witness' trial testimony:

> [Bailor's] first [allegation] was in regard to [trial counsel's] questioning of [the Victim]. In [Bailor's] PCRA petition, he attached copies of an interview between the Victim and Trooper Peacock where the Victim made comments regarding [Bailor's] appearance and his vehicle, which are claimed to be inconsistent. [Bailor] argues that [trial counsel] was ineffective because he allegedly did not raise these discrepancies during the cross-examination of the Victim. [Bailor] argues that the trial transcripts are evidence of [trial counsel's] lack of questioning. However, the trial transcripts confirm that [trial counsel] did question the Victim on discrepancies about the color of [Bailor's] van. Regardless, the Victim remained consistent in his testimony that [Bailor] who he knew as "Bobby" Robert Bailor, was the attacker.

[Bailor's] second [allegation] is with the alleged questioning of [Mr. Larson], another Commonwealth witness who [Bailor] claims contradicted the testimony of the Victim. [Bailor] argues that [trial counsel] was ineffective in questioning Mr. Larson about seeing the Victim come outside and get in his car after seeing the silver van go by, as the Victim had testified that he was attacked outside and then got into his car. The [trial court] notes that the jury heard both witnesses and had the ability to resolve any allegedly inconsistent testimony before rendering their verdict. The jury determined that sufficient evidence was presented to find [Bailor] guilty, which negates [his ineffectiveness] claim.

PCRA Court Opinion, 8/6/25, at 6-7 (excess capitalization omitted).

The PCRA court then explained how Bailor failed to meet his burden of establishing any of the three prongs of the ineffectiveness test:

First, [Bailor] failed to satisfy the first prong for ineffectiveness in that he has not proven that this claim has arguable merit. [Bailor] had not presented sufficient evidence to prove that this is a meritorious argument. Second, [Bailor] failed to satisfy the second prong for ineffectiveness as [Bailor] has not proven that [trial counsel] had no reasonable basis for his approach at trial and in the cross examining of these witnesses. It has already been determined that [trial counsel's] trial strategy was focused on negating [Bailor's] guilt through a mental infirmity defense, not a "who done it" defense. [Bailor] did not sufficiently prove another strategy would have had a potential for success substantially greater than the one pursued by [trial counsel]; thus his claim does not overcome the reasonable basis test. Finally, [Bailor] fails to satisfy the third prong of ineffectiveness as [Bailor] has not proven that he suffered prejudice as a result of [trial counsel's] representation. The jury would have resolved any alleged inconsistencies before rendering their verdict that sufficient evidence had been presented to find [Bailor] guilty. [Bailor] has offered insufficient evidence to show that the alleged inconsistencies were so great that a different verdict would have been rendered. Furthermore, [Bailor] has failed to prove that had [trial counsel] attempted to cross examine the witnesses in a different way that a different verdict would have been rendered. Therefore, based on [Bailor's] failure to satisfy any of the three prongs, his second allegation of ineffective assistance of counsel

for [trial counsel's] cross-examination of witnesses will be DENIED.

PCRA Court Opinion, 8/6/25, at 7 (excess capitalization omitted).

Our review of the record supports the PCRA court's conclusions as to these witnesses. As to the victim's alleged inconsistencies regarding his description of Bailor's van, trial counsel asked about the discrepancy between the victim's pre-trial statements and his trial testimony. Counsel asked about the color of the van and the victim testified that the van had a tire attached to its roof. As to Mr. Larson's testimony, when compared to the victim's, we see no evident inconsistency. Mr. Lawson also testified that the van had a tire on its roof. Regarding Bailor's claim that the two men offered different testimony about how and when the van left the area, we discern that any inconsistency was because each man saw the van from different locations and at different times on the day of the incident.

The PCRA court provided separate reasons why Bailor's ineffectiveness claim involving trial counsel's cross-examination of the DNA expert failed to meet any of the three prongs of the ineffectiveness test:

> [Bailor's] final [allegation] is that [trial counsel] was ineffective in his inquiry into the DNA analysis done on [Bailor's] knife. Specifically, [Bailor] argues that [trial counsel] was ineffective because he failed to question the Commonwealth's expert, [Ms. Taylor Richart], about whether the DNA analysis could identify animal blood and whether animal blood could result in an unmatched profile. [Bailor] claimed that he heard this theory from his sister, who has never been qualified as an expert in any field, specifically in the field of DNA analysis. [Bailor] claimed that he provided this information to [trial counsel], which [counsel] did not utilize at trial.

- 12 -

Ms. Richart testified that the trial that the Victim could not be excluded as a potential contributor to the blood mixture that was tested and pulled from [Bailor's] knife. [Trial counsel] questioned Ms. Richart on this language and she confirmed that the Victim's DNA had been found on [Bailor's] knife. Although [Bailor] claims that [trial counsel's] lack of questioning about animal blood was detrimental to his case, Ms. Richart's confirmation that the Victim's blood had been found on [Bailor's] knife renders this argument irrelevant.

First, [Bailor] failed to satisfy the first prong for ineffectiveness in that he has not proven that his claim has arguable merit. The information with which [Bailor] claimed [trial counsel] should have relied on in his questioning of the DNA analysis was not based on any expert evidence or opinion and is therefore meritless. Second, Bailor failed to satisfy the second prong for ineffectiveness as [Bailor] has not proven that [trial counsel] had no reasonable basis for his approach to the DNA analysis. In fact, [trial counsel] questioned Ms. Richart about her language in regard to the blood sample that was pulled from [Bailor's] knife. However, Ms. Richard ultimately confirmed that the Victim's DNA had been identified on [Bailor's] knife; thus, making an animal blood argument irrelevant. Finally, [Bailor] fails to satisfy the third prong of ineffectiveness as [Bailor] has not proven that he suffered prejudice as a result of [trial counsel's] representation. The Commonwealth's expert confirmed the presence of the Victim's DNA on [Bailor's] knife after [trial counsel] questioned the DNA analysis, and the jury, as the sole fact finders, found that sufficient evidence had been presented to find [Bailor] guilty. [Trial counsel's] failure to bring up the unsupported claim about animal blood possibly resulting in an unmatched profile would not have negated Ms. Richart's expert knowledge that the DNA analysis found that the Victim's DNA was present on [Bailor's] knife. Therefore, based on [Bailor's] failure to satisfy any of the three prongs, his final allegation of ineffective assistance of counsel for [trial counsel's] approach to the DNA analysis will be DENIED.

PCRA Court Opinion, 8/6/25, at 8-9 (excess capitalization omitted).

Again, our review of the record supports the PCRA court's conclusions.

Like the PCRA court, we fail to see how questioning this expert about animal

blood who have aided Bailor's defense. The question of whether a portion of the blood in the mixture could have been from an animal would not have changed the expert's conclusion that the victim's blood could not be excluded from the remaining portion of the mixture. Additionally, as the PCRA court observed, trial counsel did get Ms. Richart to acknowledge certain key points: 1) that the language "cannot be excluded" is not the same as a DNA match, and 2) that the term "match" is not used when there is a "mixture where there's not a clear major or minor" contributor. *See* N.T., 10/6/22, at 137. Thus, we agree Bailor's claim of ineffectiveness regarding trial counsel's questioning of the DNA expert merits no relief.

In sum, although the PCRA court only needed to conclude that Bailor failed to establish any one prong of the test for ineffectiveness of counsel, our review of the record supports the court's conclusion that Bailor could not establish any of the three prongs as to either issue. Thus, neither of Bailor's ineffectiveness claims entitles him to post-conviction relief, and we affirm the order denying his amended PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

5/26/2026

- 14 -